956 F.2d 275
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jorge CAZARES-LEDESMA, Defendant-Appellant.
 No. 90-50482.
 United States Court of Appeals, Ninth Circuit.
 Submitted Jan. 7, 1992.*
Decided Feb. 14, 1992.
 
 Before FARRIS, NOONAN and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 FACTS
 
 2
 After a police officer had found appellant Jorge Cazares-Ledesma in a car with a kilogram of cocaine, the government targeted him for investigation as a cocaine trafficker. Based on reports that he was a heavy steroid user, the government arranged for an informant to offer him steroids in exchange for cocaine. The informant first told Cazares he could furnish steroids, then suggested Cazares pay for them in cocaine instead of cash. (Cazares does not argue on appeal that he was entrapped into dealing the cocaine.) Eventually they exchanged several types of steroids for cocaine. Cazares used the steroids himself. Several months afterward, Cazares was arrested.
 
 
 3
 Cazares was indicted for distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) (1988). He pled not guilty, and before trial Paul DiPaolo was substituted as his attorney of record. Because of a conflict, DiPaolo declined to represent Cazares in another case also pending against him, keeping this case and referring the other case to attorney Clyde Munsell. Both attorneys also represented one Paul Pierce, a defendant in an unrelated case. They both convinced Cazares, without pressuring him, to cooperate with officials in a narcotics sting in Las Vegas. Pierce also cooperated, with Cazares' consent. By a series of events not made clear in the record, the sting resulted in the release of Munsell's brother from prison. Eventually, DiPaolo advised Cazares to waive a jury trial, which he did. He was convicted.
 
 ANALYSIS
 
 4
 A. Ineffective assistance of counsel.
 
 
 5
 Cazares argues that he received ineffective assistance of counsel because his attorneys had conflicts of interest. First, the attorney Munsell had an interest in obtaining the release of his brother from prison. Second, both attorneys had an interest in benefiting Pierce, their common client, by providing him a chance to cooperate in the sting. Cazares also points to several possible defaults by his attorney: advising him to participate in the sting, which he states benefited Munsell's brother and Pierce but did not benefit him; failing to discuss plea bargaining with him; urging him to waive jury trial; and failing to have him testify at his trial. The district court determined that his attorney had done "an excellent job" representing him and the court "certainly [could]n't fault him."
 
 
 6
 We review for clear error the trial court's determination of facts underlying a claim of ineffective assistance of counsel. United States v. Birtle, 792 F.2d 846, 847 (9th Cir.1986). We review de novo whether these facts show ineffective assistance of counsel. Iaea v. Sunn, 800 F.2d 861, 864 (9th Cir.1986). To show that a conflict of interest led to ineffective assistance of counsel, defendant must demonstrate that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance. Strickland v. Washington, 466 U.S. 668, 692 (1984) (citing Cuyler v. Sullivan, 446 U.S. 335, 350, 348 (1980)).
 
 
 7
 All of Cazares' grounds for ineffective assistance fail because he never shows that a conflict caused any of the alleged defaults. Without a connection between conflict and alleged default, there is no showing that the conflict affected his representation. To begin with, Cazares does not explain, nor is it obvious, how the conflicts would have motivated his attorneys to avoid discussing plea bargaining with him or to urge him to waive his right to a jury trial. Cazares does allege that the failure to have him testify at trial "may have been impacted by" the attorney's fear that the Las Vegas sting would be disclosed. He does not, however, explain why the attorney would fear, months after the sting was completed, that it would be disclosed. Nor does he explain why the prosecution would wish to bring the sting out. This speculative allegation does not establish that the alleged conflict of interest affected his representation.
 
 
 8
 The advice to participate in the sting does not justify a finding of ineffective assistance, even if we accept Cazares' allegation that the attorneys were merely using him to help others. "An error by counsel ... does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland, 466 U.S. at 691. Cazares has shown no way in which the advice to participate or his actual participation affected his trial. The possibility that he was unfairly used away from trial does not bear on his guilt or innocence or on the process that determined it. Since the alleged error did not affect the judgment, it does not establish ineffective assistance.
 
 
 9
 B. Outrageous government conduct.
 
 
 10
 Cazares claims that the government engaged in outrageous conduct when it provided him with potentially dangerous veterinary steroids and growth hormones, without testing them for safety, knowing he would use them but not arresting him until four months later. Cazares also argues that the government directed the enterprise from start to finish. We review de novo the trial court's refusal to dismiss the indictment for outrageous government conduct. We view the evidence in the light most favorable to the government and accept the trial court's factual findings unless clearly erroneous. United States v. Emmert, 829 F.2d 805, 810-11 (9th Cir.1987).
 
 
 11
 To qualify as outrageous conduct, the government's action must be "so grossly shocking and so outrageous as to violate the universal sense of justice" United States v. Restrepo, 930 F.2d 705, 712 (9th Cir.1991). The government's conduct here does not descend to that level. The government took reasonable steps to ensure that the steroids would not endanger Cazares' health. Its expert testified that the drugs, in the amounts provided, would not have harmed a user's health within the time leading up to the arrest. The agents had consulted with the Food and Drug Administration about the safety of providing the drugs. The veterinary steroids were manufactured to the same standards as drugs for human consumption. Under such circumstances, merely offering to provide Cazares with drugs that he was already using was not "repugnant to the American system of justice," United States v. Smith, 924 F.2d 889, 897 (9th Cir.1991). Cf. United States v. Wiley, 794 F.2d 514 (9th Cir.1986).
 
 
 12
 Cazares' other outrageous-conduct argument also fails. He argues correctly that the government's direction of the enterprise from start to finish, if established, would constitute outrageous conduct. United States v. Bogart, 783 F.2d 1428, 1436 (9th Cir.1986). This case does not present such circumstances. The government merely infiltrated an informant into Cazares' pre-existing schemes to obtain steroids and distribute cocaine.
 
 
 13
 The judgment of conviction is AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without argument pursuant to 9th Cir.R. 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3